WALLACE, Judge.
 

 Gary R. Siegel and Cynthia A. Leahy-Fernandez challenge awards of attorney’s fees made against them under section 57.105(1), Florida Statutes (2006). In the underlying action brought by Ms. Leahy-Fernandez, who was represented by Mr. Siegel, the circuit court ruled against Ms. Leahy-Fernandez on her claims. Because Ms. Leahy-Fernandez presented evidence at the final hearing that tended to prove the material facts necessary to establish her claims, we reverse the attorney’s fee awards.
 

 I. THE FACTS AND PROCEDURAL BACKGROUND
 

 Ms. Leahy-Fernandez was a petty officer in the United States Navy. Her husband, Roberto Fernandez, worked as a long-distance truck driver. Ms. Leahy-Fernandez and her husband had gradually acquired a few rental houses in the Tampa area. However, the demands of Ms. Le-ahy-Fernandez’s service in the Navy frequently required the couple to live outside the United States. When Ms. Leahy-Fer-nandez and Mr. Fernandez were in the area, they managed their rental houses themselves. But when they were out of the country, they employed Five-Star Realty, Inc., to manage their rental houses. The couple also used Five-Star Realty as their listing agent whenever they sold a property.
 

 Raymond Rowe and Polly Rumbough operated Five-Star Realty. Neither Ms. Leahy-Fernandez nor her husband was related to Mr. Rowe or to Ms. Rumbough, and the parties did not have a close personal relationship. However, for several years Ms. Leahy-Fernandez and her husband had enjoyed a cordial business association with Mr. Rowe and Ms. Rumbough. In April 2004, Mr. Fernandez incurred a debt that he was unable to pay. He called Mr. Rowe for help, and Mr. Rowe loaned him $11,000. Mr. Fernandez timely repaid the loan with interest.
 

 Later in 2004, after Ms. Leahy-Fernan-dez and her husband had sold their home in Hawaii, they sent a total of $50,000 to Mr. Rowe, Ms. Rumbough, and Five-Star Realty. Ms. Leahy-Fernandez and Mr. Fernandez transferred the money by three checks drawn on their joint account at a bank in Hawaii. Each of the three checks was dated November 1, 2004. One of the checks was payable to Mr. Rowe for $20,000. Another check was payable to Ms. Rumbough for $20,000. The third
 
 *208
 
 check was payable to Five-Star Realty for $10,000. The memorandum line on the checks payable to Mr. Rowe and Ms. Rum-bough read, “PERSONAL.” The memorandum line on the check payable to Five-Star Realty was blank. Mr. Rowe, Ms. Rumbough, and Five-Star Realty received the checks by mail from Hawaii and deposited the checks into their respective bank accounts. The checks were paid in the regular course of business.
 

 Neither of the parties sent any letters or e-mails establishing the purpose for which Ms. Leahy-Fernandez and Mr. Fernandez sent the $50,000. Mr. Rowe, Ms. Rum-bough, and Five-Star Realty did not sign a promissory note or other memorandum with a promise to repay the money. In fact, they did not even send a written acknowledgment of receipt of the funds. There were never any payments of interest or principal indicating that the parties regarded the transaction as a loan. Thus, except for the cancelled checks, the $50,000 transaction between the two unrelated parties was completely undocumented. In addition, there were no third-party witnesses with knowledge of the parties’ intent.
 

 On March 15, 2007, approximately two and one-half years after sending the $50,000, Ms. Leahy-Fernandez and Mr. Fernandez filed an action against Mr. Rowe, Ms. Rumbough, and Five-Star Realty to recover the money. Mr. Fernandez was diagnosed with cancer in May 2007; he died in 2008 while the action was pending. Neither of the parties arranged for the taking of Mr. Fernandez’s deposition.
 

 In a second amended complaint filed after Mr. Fernandez’s death, Ms. Leahy-Fernandez asserted her ownership of the entire claim as the surviving spouse of Mr. Fernandez. She alleged that the $50,000 was a loan that Mr. Rowe, Ms. Rumbough, and Five-Star Realty had promised to pay on or before November 1, 2006. Ms. Le-ahy-Fernandez alleged further that Mr. Rowe, Ms. Rumbough, and Five-Star Realty had promised and failed to deliver a note for the loan secured by a mortgage on the business premises of Five-Star Realty. In her second amended complaint, Ms. Le-ahy-Fernandez asserted four claims against Mr. Rowe, Ms. Rumbough, and Five-Star Realty: Count I, money lent; Count II, fraud in the inducement; Count III, a request for the imposition of a constructive trust; and Count IV, a claim for the imposition of an equitable mortgage on the business premises of Five-Star Realty.
 

 Mr. Rowe, Ms. Rumbough, and Five-Star Realty took the position that Ms. Leahy-Fernandez and Mr. Fernandez sent them the $50,000 as a gift rather than as a loan. They also claimed that the Statute of Frauds, section 725.01, Florida Statutes (2004), barred Ms. Leahy-Fernandez’s claims. In support of their defense based on the Statute of Frauds, Mr. Rowe, Ms. Rumbough, and Five-Star Realty alleged that the purported loan agreement was unenforceable because it was not in writing and was not signed by them.
 

 II. THE EVIDENCE AT THE FINAL HEARING
 

 The pretrial conference order summarized the issues to be tried as follows: “Whether the $50,000.00 was a gift or a loan. If the $50,000.00 was a loan, then did the Defendants fraudulently induce the loan, and if so, should a constructive trust/equitable mortgage be awarded.” The circuit court tried the case without a jury. At the final hearing, Ms. Leahy-Fernandez, Mr. Rowe, and Ms. Rumbough were the only witnesses who testified. We review their testimony briefly.
 

 Ms. Leahy-Fernandez identified the three cancelled checks, and they were received in evidence. Ms. Leahy-Fernandez
 
 *209
 
 testified that she and Mr. Fernandez finally agreed to loan the $50,000 after Mr. Rowe and Ms. Rumbough bombarded them by telephone for three weeks with requests for the money. Although there were three separate checks, there was a single loan for $50,000.
 
 [1]
 
 According to Ms. Leahy-Fernandez, Mr. Rowe and Ms. Rumbough promised to provide a note for the loan secured by a mortgage on the business premises of Five-Star Realty. Despite repeated requests, Ms. Leahy-Fernandez and her husband never received the promised documentation for the loan.
 

 Mr. Rowe and Ms. Rumbough denied asking Ms. Leahy-Fernandez and Mr. Fernandez for any money. They testified that the three checks arrived unexpectedly one day in the mail at the Five-Star Realty office in Tampa. At the time, Mr. Rowe and Ms. Rumbough were taking care of personal matters in North Carolina. According to Mr. Rowe and Ms. Rumbough, Ms. Leahy-Fernandez and Mr. Fernandez sent the $50,000 to thank them for their services over the years. Mr. Rowe and Ms. Rumbough denied making any promise to repay the money. They both testified that when they received the funds, they never had any intent to repay Ms. Leahy-Fernandez and Mr. Fernandez.
 

 III. THE CIRCUIT COURT’S RULINGS
 

 At the conclusion of Ms. Leahy-Fernan-dez’s testimony, the circuit court ruled that the Statute of Frauds barred Count I, the claim for money lent. The defense theory was that the claimed oral promise to repay the $50,000 was unenforceable because of the absence of a signed memorandum acknowledging a promise to pay. At the conclusion of the case, the circuit court made an extensive oral ruling analyzing in considerable detail the evidence presented. Although the circuit ruled against Ms. Le-ahy-Fernandez on the three remaining counts of the second amended complaint, the circuit court’s observations concerning the conflicts in the parties’ testimony are noteworthy:
 

 Well, the difficult part of this job is I have to be the decision maker which isn’t an easy job[;] however[,] the law does give me some guidance which is why we have laws.
 
 The problem that we have here is that we have opposing stories and opposing evidence
 
 ....
 

 First of all, the law requires that the burden of proof be by the greater weight of the evidence and that is the Plaintiffs burden to meet that proof....
 

 I have not heard sufficient evidence to prove fraud in the inducement in this case.
 
 I am not saying that either side has misrepresented their understanding of the facts here today,
 
 but the burden rests clearly on the Plaintiff and I haven’t heard sufficient evidence to establish fraud in the inducement....
 

 Now, as far as the unjust enrichment claim,
 
 ... I struggled with that.
 

 [[Image here]]
 

 And both sides have testified to things that give me [p]ause. ...
 

 [[Image here]]
 

 There’s not one piece of evidence received by the Court that shows any letter or email until we get into the correspondence of 2007 which, again, the burden is on the Plaintiff to establish that there was some expectation to receive a note or mortgage or some kind of securitization of this alleged loan
 
 and
 
 
 *210
 

 there isn’t anything] other than her testimony which is refuted directly by the Defendant’s testimony.
 
 And, although I find this transaction was exceedingly strange and I do not fully understand it, I am confident that the evidence does not support the Plaintiffs complaint as to unjust enrichment as well and I have no choice, as a matter of law, but to rule in favor of the Defendants.
 

 (Emphasis added.) In noting its deliberation about the evidence in the case and the testimony from both sides that gave it pause for thought, the circuit court expressly recognized that its ruling necessarily resolved conflicting testimony in favor of Mr. Rowe, Ms. Rumbough, and Five-Star Realty. Thus Ms. Leahy-Fernan-dez’s testimony — together with the can-celled checks — supported her claims, but her showing was not sufficient to overcome her burden of proof in light of the other evidence in the case.
 

 After the conclusion of the final hearing, the circuit court entered a final judgment on the merits against Ms. Leahy-Fernan-dez and in favor of Mr. Rowe, Ms. Rum-bough, and Five-Star Realty. Ms. Leahy-Fernandez did not' appeal the final judgment against her on the merits of the action. Next, the circuit court entered an order granting a motion for attorney’s fees under section 57.105(1) filed by Mr. Rowe, Ms. Rumbough, and Five-Star Realty. In its order, the circuit court ruled that Ms. Leahy-Fernandez and Mr. Siegel “knew or should have known at the time of the filing of the Second Amended Complaint that no admissible evidence existed to support [Ms. Leahy-Fernandez’s] claims.”
 

 After a separate hearing on the amount of fees and costs, the circuit court ruled that Mr. Rowe, Ms. Rumbough, and Five-Star Realty were entitled to recover $86,276.25 for attorney’s fees, $2240 for expert witness fees, and $8897.64 in costs, for a total of $42,413.89.
 
 [2]
 
 The circuit court ordered that Mr. Siegel would pay one-half of the amount assessed and entered a final judgment against him for $21,206.95. The circuit court also assessed the balance of the amount due against Ms. Leahy-Fer-nandez but withheld the entry of a final judgment against her because of her pending bankruptcy proceeding.
 
 [3]
 

 Both Mr. Siegel and Ms. Leahy-Fernan-dez timely appealed the order assessing the attorney’s fees and costs against them. On Ms. Leahy-Fernandez’s motion, this court consolidated the appeals. We also granted Ms. Leahy-Fernandez’s motion to adopt the pertinent arguments in the initial brief filed by Mr. Siegel.
 

 IV. THE STANDARD OF REVIEW
 

 Ms. Leahy-Fernandez did not appeal the final judgment against her on the merits of her claims seeking the recovery of the $50,000 and related relief. Therefore, we do not consider the circuit court’s ruling on the merits of the underlying action. Instead, our task is to review the circuit court’s ruling that Ms. Leahy-Fer-nandez and Mr. Siegel knew or should have known when they filed the second amended complaint that there was no ad
 
 *211
 
 missible evidence to support Ms. Leahy-Fernandez’s claims.
 
 See Peyton v. Horner,
 
 920 So.2d 180, 188 (Fla. 2d DCA 2006). The standard of review applicable to the circuit court’s award of fees under section 57.105(1) is abuse of discretion.
 
 Id.; Yakavonis v. Dolphin Petroleum, Inc.,
 
 934 So.2d 615, 618 (Fla. 4th DCA 2006).
 

 V. THE APPLICABLE LAW
 

 Section 57.105(1), Florida Statutes (2006), provides as follows:
 

 Upon the court’s initiative or motion of any party, the court shall award a reasonable attorney’s fee to be paid to the prevailing party in equal amounts by the losing party and the losing party’s attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party’s attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
 

 (a) Was not supported by the material facts necessary to establish the claim or defense; or
 

 (b) Would not be supported by the application of then-existing law to those material facts.
 

 However, the losing party’s attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney’s fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.
 

 In pertinent part, section 57.105(1) requires a court to award a reasonable attorney’s fee to the prevailing party in equal amounts to be paid by the losing party and the losing party’s attorney where the court finds that the losing party or the losing party’s attorney knew or should have known that a claim was not supported by the material facts necessary to establish it.
 
 In re Forfeiture of 1997 Jeep Cherokee,
 
 898 So.2d 223, 225 (Fla. 2d DCA 2005). A claim is “supported by the material facts” within the meaning of the statute when “the party possesses admissible evidence sufficient to establish the fact if accepted by the finder of fact.”
 
 Albritton v. Forrera,
 
 913 So.2d 5, 8 n. 1 (Fla. 1st DCA 2005).
 

 “A finding that a party is entitled to recover attorney’s fees under section 57.105 must be based upon substantial, competent evidence presented at the hearing on attorney’s fees or otherwise before the court and in the record.”
 
 Mason v. Highlands Cnty. Bd. of Cnty. Comm’rs,
 
 817 So.2d 922, 923 (Fla. 2d DCA 2002). “When assessing attorney’s fees against a losing party’s attorney, the trial court must find that there were no justiciable issues of law or fact and that the losing party’s attorney did not act in good faith based on the representations of his or her client.”
 
 Weatherby Assocs., Inc. v. Ballack,
 
 783 So.2d 1138, 1143 (Fla. 4th DCA 2001).
 

 VI. DISCUSSION
 

 Our task is to determine whether, under the circumstances of this case, the circuit court abused its discretion in awarding fees under section 57.105(1) against Mr. Siegel and Ms. Leahy-Fernandez. The evidence established that Ms. Leahy-Fer-nandez and Mr. Fernandez entered into a financial transaction that — at least for them — involved a very significant amount of money. Unfortunately, they failed to obtain legal representation before proceeding. Consequently, the transaction was inadequately documented. The problems posed by the inadequacy of the documentation were compounded by the omission to
 
 *212
 
 obtain the deposition of Mr. Fernandez after the lawsuit was filed.
 

 When the matter went to trial, the circuit court faced the difficult task of sorting through the parties’ conflicting testimony to determine the operative facts. As the plaintiff, Ms. Leahy-Fernandez had the burden to establish by competent evidence each material fact necessary to establish her claims.
 
 See Smith’s Bakery, Inc. v. Jernigan,
 
 134 So.2d 519, 521 (Fla. 1st DCA 1961). In the absence of adequate documentation for the transaction, obtaining a favorable outcome for Ms. Leahy-Fernandez was necessarily an uphill battle. As it happened, the circuit court resolved the conflicts in the testimony against Ms. Leahy-Fernandez, and she lost her case as a result.
 

 However, the circuit court’s finding that “no admissible evidence existed to support [Ms. Leahy-Fernandez’s] claims” is not supported either by the record or the circuit court’s own oral announcement of its ruling on the merits. Ms. Leahy-Fernandez’s claims were “supported by the material facts” necessary to establish them because her testimony — if believed by the circuit court — would have been sufficient to prove the claims.
 
 See Albritton,
 
 913 So.2d at 8 n. 1. Moreover, in its oral ruling, the circuit court expressly acknowledged that the case involved “opposing stories and opposing evidence.” The conflicting testimony from the parties was sufficient not only to give the circuit court “pause,” but also to require an internal “struggle” for the circuit court to resolve the case. Where, as in this case, the losing party presents competent, substantial evidence in support of the claims or defenses presented and the trial court determines the issues of fact adversely to the losing party based on conflicting evidence, section 57.105(1) does not authorize an award of attorney’s fees against the attorney for the losing party and his or her client. Thus we conclude that the circuit court abused its discretion in awarding attorney’s fees against Mr. Siegel and Ms. Leahy-Fernandez.
 

 This court’s decision in
 
 Schultz v. Williams,
 
 472 So.2d 1347 (Fla. 2d DCA 1985), supports our conclusion. The underlying action in
 
 Schultz
 
 involved a challenge by several property owners to the property appraiser’s assessment of certain condominium units that they owned.
 
 Id.
 
 at 1347. The parties engaged in considerable discovery, and “several witnesses gave conflicting testimony at trial.”
 
 Id.
 
 at 1348. The plaintiffs ultimately prevailed on their claims.
 
 Id.
 
 After winning at trial, the plaintiffs moved for fees under section 57.105.
 
 Id.
 
 at 1347. The trial court granted the motion and made an award of attorney’s fees to the plaintiffs against the property appraiser.
 
 Id.
 

 On the property appraiser’s appeal of the fee award, the plaintiffs argued that the property appraiser’s defense concerning his compliance with the statutory mandates for determining just valuation was “baseless.”
 
 Id.
 
 at 1348. This court rejected the plaintiffs’ argument and reversed the fee award. After expressly noting the presentation of “considerable conflicting testimony” at trial, this court went on to say:
 

 Even at the conclusion of the trial, the court apparently had not reached a decision. The trial judge required counsel for both parties to submit proposed findings of facts and conclusions of law. The judge then entered his final judgment in favor of the plaintiffs. That judgment included a ten-page analysis of the application of the facts to each of the criteria set forth in section 193.011.
 

 Trial courts must be cautious not to award attorney’s fees under section 57.105 merely because a party’s defense
 
 *213
 
 is unavailing. Here, the issues were resolved against [the property appraiser]. Yet, after an examination of the record, we cannot say that his defense of his method of assessment of apartment units converted to condominiums was wholly without merit.
 

 Id.
 
 Thus
 
 Schultz
 
 stands for the proposition that when opposing parties present competent, substantial evidence in support of their claims and the trier of fact must resolve conflicting testimony to decide the case, the matter is not frivolous for the purpose of awarding fees under section 57.105.
 
 Cf. Hernandez v. Leiva,
 
 391 So.2d 292, 294-95 (Fla. 3d DCA 1980) (affirming an award of fees under section 57.105 after a trial on liability where the losing party called no witnesses in her behalf; only nominally attempted to create an issue by cross-examination of the prevailing party’s witness; and presented testimony that the trial court refused to consider because, at most, it raised an affirmative defense that had not been pleaded).
 

 We recognize that this court decided
 
 Schultz
 
 in 1985, well before the 1999 amendments to section 57.105 “lowered the bar a party must overcome before becoming entitled to attorney’s fees pursuant to section 57.105.”
 
 Albritton,
 
 913 So.2d at 8. Nevertheless, we think that the principle recognized in
 
 Schultz
 
 survived the 1999 amendments to the statute.
 
 See Peyton,
 
 920 So.2d at 183-84 (reversing an award of attorney’s fees under a post-1999 version of the statute where the losing party advanced a plausible interpretation of an assignment that the trial court determined to be incorrect);
 
 Asinmaz v. Semrau,
 
 42 So.3d 955, 959 (Fla. 4th DCA 2010) (determining that a jeweler’s action for defamation against a customer was not frivolous under a post-1999 version of the statute where “the case was not completely without merit or contradicted by overwhelming evidence”). One of the main reasons we have trials is to resolve disputes involving the presentation of conflicting evidence by the litigants.
 
 See Tregambo v. Comanche Mill & Mining Co.,
 
 57 Cal. 501, 505 (1881) (“A trial is the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause for the purpose of determining such issue.”). Section 57.105 does not penalize losing parties and their attorneys when they present competent, substantial evidence in support of the losing parties’ claims or defenses simply because the trier of fact resolves conflicting testimony against the losers. A contrary conclusion would make engaging in litigation a very risky business for both lawyers and their clients.
 

 Finally, we have not overlooked the Statute of Frauds defense raised by Mr. Rowe, Ms. Rumbough, and Five-Star Realty. The circuit court erred in ruling that the Statute of Frauds barred Ms. Leahy-Fernandez’s claim for money lent. To be sure, there was no signed memorandum evidencing the alleged loan. But Ms. Leahy-Fernandez’s claim was for a direct promise to pay, not for a promise to pay another’s debt. Accordingly, her claim for money lent was not within the purview of the Statute of Frauds.
 
 See Larnel Builders, Inc. v. U.S. Concrete Pipe Co.,
 
 117 So.2d 438, 438 (Fla. 3d DCA 1960);
 
 see also Jim & Slim’s Tool Supply, Inc. v. Metro Cmtys. Corp.,
 
 328 So.2d 213, 215 (Fla. 2d DCA 1976) (“The pivotal question on the applicability of [the Statute of Frauds] is whether the promise is, in fact, an actual assumption of the liability of another with consideration flowing only to such other or, to the contrary, is an original undertaking of the promisor himself supported by independent consideration flowing to him.”).
 

 
 *214
 
 For the foregoing reasons, we reverse the final judgment to the extent that it awards fees and costs under section 57.105(1) against Mr. Siegel and Ms. Le-ahy-Fernandez. However, Mr. Rowe, Ms. Rumbough, and Five-Star Realty are entitled to recover their taxable costs against Ms. Leahy-Fernandez. § 57.041(1).
 

 Reversed.
 

 LaROSE and BLACK, JJ., Concur.
 

 [1]
 

 . When asked why there were three separate checks, Ms. Leahy-Fernandez replied, "When I got on the phone with [Mr. Rowe,] that’s how he told me he wanted the checks done. He told me specifically how he wanted them written out.”
 

 [2]
 

 . The circuit court erred in assessing one-half of the $2240 for expert witness fees and one-half of the $3897.64 in costs against Mr. Siegel. "[S]ection 57.105 does not provide for the imposition of costs against the losing party's attorney.”
 
 Berman & Feldman v. Winn Dixie, Inc.,
 
 684 So.2d 320, 323 (Fla. 4th DCA 1996).
 

 [3]
 

 . On March 15, 2007, approximately two and one-half years after sending the $50,000, Ms. Leahy-Fernandez filed a petition under Chapter 13 of the United States Bankruptcy Code. Later, the bankruptcy court granted relief from the automatic stay to permit Mr. Rowe, Ms. Rumbough, and Five-Star Realty to liquidate their claim for attorney’s fees.